role of a fact finder to issue a summary judgment. The court weighed and rejected the non-movement evidence and accepted the movement evidence to grant summary judgment to the movement. But because the summary judgment standard requires the opposite, this decision must be reversed. Subject to the court's questions, I'd like to focus on two issues. First, the regulatory context to the question of whether the defendants had the knowledge required under the False Claims Act, or FCA. And second, the disputes of fact regarding Dr. Magra's personal liability. This court warned in Audubon Imports and International Short Stops that when granting an MSJ on intent or state of mind, the court must be vigilant to draw every reasonable inference from the record in a light most flattering to the non-moving party. Now, the regulatory guidance that was available at the time Dr. Magra started BestCare was certainly not clear, and in fact, suggested that the type of billing issue was not a problem. There are three tiers of available guidance. There's the statute, which simply says that HHS must create a method for billing. And there's an excellent description of all of this in the record by the former acting director for the Center of Medicare Management at the Department of Health and Human Services, and that starts at page 5738 of the record and goes through page 5745. So the statute says HHS must set up a fee based on the number of miles traveled and the personal costs at issue. There's no regulation that would be CMS, and it has a two-bullet structure that was extensively discussed in the briefs. That didn't change during the relevant time period. But there was a Trailblazer manual, and CMS asks these contractors to take on the role of educating providers about these very complex regulations. And Trailblazer had a manual in 2002 which Dr. Magra referred to, and in that, the reference to piece 9603 says absolutely nothing about the technician accompanying the sample. Now, two-thirds of the way through the disputed period in June of 2007, Trailblazer did issue another manual, and that had some guidance that probably would have put somebody on inquiry notice about this. But Trailblazer never sent it to BestCare, and the evidence showed that BestCare did not receive it and wasn't aware of it until after the relevant period. Counsel, was Section 1395L amended in the relevant time period? Not that I'm aware of. I went through and looked, and I didn't see any relevant amendment during the time period. So the provision that's in the Federal Appellee's Addendum of Authority, the first provision of which is the statutory text of 1395L, is the one that controls? Yes, Your Honor. And the provision that we're supposed to be looking at is 1395L, subsection H, subsection 3, subsection B, a fee to cover the transportation and personnel expenses for trained personnel to travel. Well, it also says, Your Honor, that the Secretary shall provide a method for computing the fee based on the number of miles traveled and the personnel costs associated. But it doesn't actually say how that should be done. It says for trained personnel to travel. Well, and part of it was trained personnel traveling. I would say that it's really important, considering that this is not a strict liability but a reckless disregard situation, to consider what is considered reasonable and common for providers in this type of situation. And again, Dr. Gustafson, who was the former acting director for the Center of Medicare Management, testified that he doesn't expect, honestly, that providers are reading the statute. He expects them to be looking at the manuals from the contractors like Trailblazer. Is there evidence in the record that would suggest that providers would reasonably expect that 72 percent of their revenues would come from billing for shipping specimens on airplanes? 72 percent of their revenue for an entire year? Was that industry practice? I think what's really important to remember is, and directly do we have a survey saying that people consider that reasonable? The answer to your question is no. I do believe that there was testimony, and I don't have the records I hear, but I know that Dr. Magara testified that he actually wasn't aware that it was that high of a percentage. He really didn't know that it was that high. Does that matter? I think it does, because what we're here on is a summary judgment. Okay. Do you disagree that BestCare billed Medicare for all miles a specimen traveled, even when that specimen was not accompanied by a technician? Do you say that there's no fact, I mean that there are fact issues? Do you disagree with that? Do we disagree that there was billing for when there was just a specimen without a technician with it? We don't dispute that that happened. Okay. Instead of prorating a trip that collected several specimens, BestCare calculated the maximum number of miles a technician theoretically could have traveled to collect each specimen and return it to the laboratory. Well, so I dispute actually two points there. The first is that theoretically could have traveled. It was a direct route, so it was the number of miles between. Well, it calculated the maximum number of miles that could have been traveled. Well, they were traveled by the specimen. They were traveled from... The specimen was flown by itself with no technician, right? So I think, yes, but let me just respond to your proration point. That is so important. Proration was not part of the summary judgment. It is figures... That's part of the reconsideration opinion. Well, the judge, yes, the district court mentioned proration several times. He gave it a lot of weight, but the government did not move on proration. Okay. And there's two really important... No, I think it's very important that we mention that because that obviously gave a lot of weight to the district court. There's two big reasons why the government did not want proration to be part of the summary judgment, and that's not part of the false claims. And the biggest one is that not only did the regulation and the guidelines didn't mention proration except between Medicare and non-Medicare patients, but even perhaps more significantly, BestCare called multiple times during the relevant time period, not after, during the relevant time period to ask about proration. And Trailblazer repeatedly told BestCare, you do not have to prorate. You only have to prorate between Medicare and non-Medicare patients. If the statute said, you shall submit all of your claims with a red cover sheet and failure to do so is a false claim, and then the provider calls and asks for guidance from someone at CMS, and they say, no, no, no, don't worry about the reds. It's fine. We don't need the red cover sheet. And so the provider submits it without the red cover sheet. You would agree with me, I would assume, that it's still a false claim under the statute, because the false claim specific, the statute says, has to have a red cover sheet, failure to do so is a false claim. I think that it, that's correct. The question is, would you have the requisite knowledge to be found liable under the False Claims Act? So the statute says, so you think you need something more than the plain statutory text, you shall submit it with a red cover sheet? 100%. For FCA, for FCA liability, yes. So what would you need? You would need, the question of course is, is this reckless disregard or gross negligence plus? The cases where you see, in fact, it's pretty rare to find a summary judgment on this. There's, there is a case, I believe it's the LTV Education v. Bell, where the defendant acknowledged they knew, it was clear that they knew what the interpretation was and they just wanted to work around it. However, there's cases like the Krizak case, where a psychiatrist was billing for 22 hours of psychiatric treatment or more a day, and the court found that that was not a summary judgment situation, that went to trial. But we have cases in this circuit and courts across the country that talk about the ostrich with the head in the sand, right? You don't need actual knowledge that's sticking. Ostrich with the head in the sand counts, right? So, and this clearly was something that the provider was thinking about, hence all of the notes in the record from the folks at the provider's office calling and asking for clarification. But the statute says, for trained personnel to travel. Your Honor, I think that goes to the reckless disregard. It's a jury question, you know. Is it a jury question even when the language includes the phrase, the trained personnel, and there's no trained personnel traveling in this circumstance? Well, there were, it's supposed to be based on and consider the cost of trained personnel and the transportation costs. The idea is the personnel might have to draw blood or do something. None of that's happening here. Correct. But there's no other way to bill for it. When Dr. Magra started BestCare, they were in Houston exclusively. And it was soon after that that he hired a billing assistant because he couldn't both run the company and bill. It was a few years later that a customer requested urgently that he serve them, that he take care of their nursing home outside of Houston. It's important to put this in context. These are nursing home patients who need blood draws pretty frequently. And it's extremely difficult to find a lab who will drive over and do essentially a house call at these nursing homes. And these clients could not find a laboratory that was willing to do it in their area. So Dr. Magra, basically for the first time, he just went out there. He sent a phlebotomist. He tried to figure out what to do. First they had people driving back and forth. But then they realized that they could just send them on Southwest. And there's only one way to bill for reimbursement for the travel. There's P9603 when it's over 20 miles. They have no option other than that. They can't just submit a receipt and say this is how much it costs. Well, maybe it's not reimbursable then. Then those nursing homes- If you can't bill for it, except to spend a bill for it over $1,000 for the $43 sample, then perhaps that should say, well, maybe there's not a way. Your Honor, I think the problem lies with the fact that the regulations simply, there's no regulation. The statute and the guidance never contemplated long distance. They just didn't contemplate it. And I think that it's worthy of note that the statute, I just have to disagree with the Court. I don't think that the statute is clear. The CMS manual is not clear. And if it were so obvious that anybody would know as a matter of law, I think it's strange that Trailblazer, when contacted multiple times, did not know. These are the people whose job it is to enforce Medicare. And Dr. Gustafson, who was also in charge of essentially laboratory billing for Medicare, testified in his testimony, which is, again, around 5-7-3-8 through 4-5. He testified that he didn't think it was clear. So what we're asking for is, this is not a strict liability. We're asking to get to a jury and to say to the jury, do you think that this is gross negligence or reckless disregard? That's all we're asking for. And you're also asking to move to a different district court. Your Honor, I know that's a very rare... Your Honor, I know that that's a very difficult request to hear for the Court. But with no authority in two sentences, are you seriously asking for that? Because then why is it in your reply brief in two sentences? I believe it was also in the... In your opening brief in two sentences at the end, too? But as you know, the standard is whether or not the judge would have substantial difficulty laying aside his previously expressed feelings, whether it's advisable... I don't think he has any feelings expressed in the opinion. Well, he did compare my client, Dr. Magra, to the prison guard at an Iraqi prison where prisoners were being tortured. And I feel that that understandably has... And that's at the record at page 6417. He also compared him to a bank robber and to somebody accepting bribes. I feel that that shows that Dr. Magra has a reasonable feeling that he won't... And so I know that it's... You don't have any personal views articulated in anything except what he stated in opinions and in court, right? I... You mean... No, there's no... Nothing extra record to show that he has personal views on this case. No, Your Honor. He just ruled against your client and did so with some rhetorical flourish that may have been ill-advised for some. Um... Yes, he... But we're really troubled by the fact that of these personal comments about Dr. Magra, not only because of the effect they've had on Dr. Magra, but also because it's not clear what the legal basis for his personal judgment of liability against Dr. Magra was, other than he views Dr. Magra as having a bad character. I thought he sees him as integral to the scheme. Well... And that's the basis of the personal judgment against the doctor. On the... The United States has not cited a single case, as far as the common law claims, where there's been recoupment of more than the third party received. And there was no tracing, no effort, really, to show that Dr. Magra got 100% of these proceeds as a 51% owner of the company. That it wasn't...that money didn't go to operational expenses or to his other co-owner. And so to hold him 100% liable, based on what appears to be a judgment of bad character, I think does show that there's been a prejudgment of that issue by the court. And it caused considerable concern to my client. So... I think that under the False Claims Act, as well, the fact that there's... I strongly believe, based on all the circumstances, that there is a question of fact about whether or not he had the requisite knowledge. He hired somebody with experience to handle his billing department. And I note that the relator did the exact same thing. The relator testified, I don't really understand Code P9603. I have a billing department to manage that. And so to hold Dr. Magra to a higher standard when he had the exact same thing, he hired an experienced department, I think is unfair to him. I believe my time is almost up, so I'll reserve the rest for rebuttal, unless there's a further question. I think you have your opening argument. You have your rebuttal. Thank you. Good afternoon. May it please the Court. Samantha Heifetz for the United States. This case is straightforward. The defendant submitted millions of dollars of claims for Medicare's travel allowance that reimburses for travel by trained technicians,  based on millions of miles that no technical person or technician traveled. And nothing in the Medicare statute or the billing codes allows for reimbursement for shipping a specimen from one location to another or for having it sent somewhere by courier. The posting notice says that's unfair and that it has to mean to reimburse it somehow, and this is the only way. Well, that's simply not what Congress has determined to do. It makes a lot of sense what Congress has decided to do. I mean, Congress... Principally, the Medicare Act is reimbursing for the labs themselves. And this here, defendants are running a clinical diagnostic lab. What we have is an extraordinary case where instead of making their money based on reimbursement for the labs for the blood tests, they were principally making their money off of the travel allowance. And what Congress determined to do was to provide these additional allowances. There's two that are relevant here. One is a small... Congress refers to it as nominal specimen collection fee that allows a lab like theirs to get a few dollars for doing the blood draw. And then related to that, and only in circumstances where they're able to collect that collection fee, they can also get this dollar-per-mile travel allowance. The specimen collection fee is worth noting because it tells you what Congress means by what it is to collect a specimen. Collecting a specimen under 1395L is for doing venipunctures, doing a blood draw, catheterizing a patient to obtain urine. It's a nominal fee to collect the sample. It doesn't mean just getting the sample. It means drawing the sample. Otherwise, it would be completely redundant with the travel allowance. There's no specimen handling fee. That's simply just not part of what Congress has determined to reimburse for. And that defendants may think that's unfair is a matter for legislative action. It's not the case before this court. And... What about the argument that it's too confusing? I think as this court has correctly noted, as the district court noted, as HHS has explained, as our briefs explained, 1395L is clear. And a defendant's own opening brief at page 20 states this, that Medicare Part B pays labs for a travel allowance to cover the transportation and personnel expenses incurred when trained personnel  to collect a sample for testing. So the fact that it also goes on to specify how the secretary should calculate that fee doesn't take away from the fact that what it authorizes is very specific, a single fee to cover this technician travel. And we know exactly what they mean. Go straight to the jury, because even if they're wrong, they should be able to say that they weren't willfully wrong and they're just a little wrong. Well, the reckless disregard is an objective standard. So this case has obviously dragged on for many, many years at this point, and sending it back to a jury to assess an objective standard is not what's required. The district court here did the right thing in recognizing that context, as the defendants know, context matters, and it's very clear what Congress was looking to reimburse for here. Isn't it unusual, though, to have summary judgment in one of these cases? This is undoubtedly an unusual case in terms of the extent and the obviousness of the unreasonableness of defendant's conduct. So absolutely, Your Honor, we agree that, as a general matter, that is certainly the case. But as this court has noted, there are instances, particularly when we're dealing with an objective standard, where this is important to recognize that, you know, where no reasonable person in like circumstances would have conducted themselves in this way, that summary judgment is appropriate. And, you know, the government endeavored here to keep summary judgment as simple as possible, and I think defendants have recognized this. We limited what we were asking the court to adjudicate in a couple of different ways. We limited the time period. We limited it to the most egregious claims. So it's only claims that were for more than 400 miles. So that was only about 14% of all of their claims. So the government didn't try to collect all of the possible damages that could have been on the table. It made this a case as factually simple as possible. Nothing turns on prorating... Is there a prorating problem with this judgment? Your Honor, nothing turns on any question of prorating. As defendants noted, that wasn't part of what we moved for in terms of summary judgment. Is this court rule on that, in that some of the damages are attributable to that? There's nothing that's attributable to prorating that isn't already attributable to the fact that they were billing for miles that did not involve a technician traveling. So the problem that we asked for summary judgment on applies to all of the damages that were awarded. There's no amount of money that's at issue that isn't covered by the very specific motion for summary judgment that the government put forward. Why should the doctor be responsible for all of it? Absolutely, Your Honor. We're talking about a closely-held company with two shareholders, Dr. Maguire and his wife. And, you know, he controlled the company. He was the CEO. He was involved in day-to-day operations. For FCA purposes, the question is whether or not he in some way caused the false claims to be filed to be submitted to the government. And courts, including this one, have recognized the nature of that kind of proximate cause. Was he a substantial factor element? Defendant's opening brief does not actually raise or dispute the application of FCA liability to Dr. Maguire. Their discussion of personal liability deals only with the $10.6 million judgment, which is the unjust enrichment, and that section of their brief discusses unjust enrichment specifically and the standards there. And so they made no mention in their opening brief of contesting the application of liability under the FCA to Dr. Maguire, where we do have joint and several liability, where that was part of the government's briefing below and part of the district court's decision. And it's completely appropriate. I mean, here you've got an individual who time and time again in the record is acknowledging to even taking credit for determinations that were made about billing. He certainly acknowledges, and there's lots of instances of people working for him, going to him with billing questions. He's the one who, at the outset, signs the enrollment agreement and agrees to abide by Medicare's statute, regulations, practice, instructions. And a lot of those instructions come from the Medicare administrative contractor, the MAC, in this case, Trailblazer. Isn't the whole point of having a MAC like Trailblazer so that doctors who are not lawyers would have someone to call to ask questions like this? They certainly can play that role here. There wasn't a call from defendants to Trailblazer about this issue. This part is undisputed. Between 2005 and 2008, the entirety of the period that's at issue for the False Claims Act, the only conversations that were had with Trailblazer pertain to the prorating issue. And what is the explanation for why Trailblazer couldn't answer those proration questions? Your Honor, because prorating is not part of the government's request for summary judgment, I don't know if there's a reason why they weren't able to answer that specific question. Certainly, where a statute is clear, as it is on this issue of whether or not you need to have a technician traveling, the advice that one gets from a contractor can't overtake that. Certainly, defendants' briefing acknowledges that any kind of manual that Trailblazer would put out or information Trailblazer would provide would be secondary to instructions from the statute or from CMS. And on the technician travel piece of things, all of these sources were very consistent from the statute through to even the 2002 Trailblazer guidance that defendants acknowledged that they had access to. And I'm happy to talk more about why it should have been clear to them from that material as well. But it could, in a normal case, calling the, in this case, the MAC Trailblazer, it could, obviously, the Trailblazer's words can't affect, you know, sort of underpreempt the statute, but they could affect the mens rea, right? Yeah, I think if we weren't talking about a case of reckless disregard, if we weren't talking about a case where there wasn't any effort to get that information from Trailblazer during the relevant period, in a very different case, there could be circumstances in which communications with a contractor could suggest that there's a valid dispute. And, obviously, in cases where you have a reasonable interpretation of the law on a truly disputed issue, and that's at the time that you're engaged in this billing contact, that's the case, then that wouldn't, you know, give rise to FCA liability. That's not this case. We don't have individuals at the time, during the relevant period, operating under any kind of a plausible interpretation of the law, given the clarity of the statute, and, quite frankly, given the clarity of the supported written documents from both CMS and from Trailblazer that were available to them. If there are... If there are no further questions... Off-topic, admittedly, why is this case languished for almost a dozen years? Your Honor, I mean, I don't know that I'm in a position to answer that. I wasn't trial counsel. My sense from the record is that there were motions that sat with the district court for some period of time. It was the relator who asked for this court's help to get the district court to move on those motions and received that in the form of the mandamus order. But, you know, there's not an easy explanation for the specifics in this case of why it may have sat for as long as it did. Diplomatically said. Diplomatically said. Thank you, Your Honor. Thank you, Your Honor. Why did it sit for 10 years or 12 years? Because the district court never entered a case management order, never allowed discovery to proceed, and never set a trial date. And so the parties were helpless to move the case forward. There were cross-motion summary judgment pending virtually the entire time. And as counsel for the government mentioned, it took a mandamus. And as this court said in that mandamus, justice delayed is justice denied. We would be happy to have a trial date just as soon as we could. If this statute was so clear, I have to ask how it was that Trailblazer couldn't understand it. The government set the time period to end before Best Care made its call to Trailblazer about the airplane miles. But that phone call is still relevant because Best Care hid nothing. How often do you see a fraud case on summary judgment where the defendant hid nothing? The defendant responded to every audit request. The defendant called Medicare over and over. In the record, Dr. Magara, every billing question he got, what he told his billing department is, call Medicare and do what they tell you to do. They called Medicare and told them, and to a provider, Trailblazer is Medicare, and told them, we are flying these samples. Is that what a fraudulent person would do? Is that what somebody who was actively hiding their head in the sand would do? There's no evidence in the record, though, that between 2005 and 2008 that they called Medicare to ask if it was allowed to bill the technician rate for flying the samples. Not for flying the samples. However, they responded to multiple audit requests. And there was not a lot of information in the record about what happened with all those audits because the governor terminated the auditors during the course of this litigation, and those records were not retained. All we have is testimony from Best Care saying we sent them everything they asked for. And the billing manager is saying, to the extent I had concerns, and she told Dr. Magara, I'm not that worried because we've given them everything they've asked for and it's never been a problem. But if they wanted to hide, if they were afraid of being found out, they wouldn't have called. And that's why that conversation is so relevant. The Krizik case and the Fottle case, both of which are discussed in the briefs, the facts are just so much more damning. In both of those cases, they got a trial. There was no summary judgment of knowledge. Now, it's important to note we did dispute his personal liability, both for the False Claims Act and on damages, and that the technicians did travel. It wasn't 100%. But they did travel quite a bit. They would drive from Dallas to Waco. They would drive from Austin to San Antonio. And they went around from nursing home to nursing home. And the damages, I don't think... You know, we also challenged the damages because I think there's a lot of fact questions about those. There was a statistical sampling that the court ordered that the government performed, but our expert had a lot of problems with that statistical sampling. And, again, that sort of battle of the experts, that belongs before a jury, not before a district court on summary judgment. And, finally, the amount alone, while sometimes quite high, cannot be the sole basis to say that this was wrong and unreasonable because under the government's theory of the case, if the phlebotomist had simply sat on the plane, there would have been nothing wrong with these amounts. So the fact that the phlebotomist was not on the plane is the only difference between these being permissible and not permissible, especially without proration at issue. Is there any other further questions for the court? Thank you. I think we have your argument. Thank you, Your Honors.